UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------X
In re:

Personal Communications Devices, LLC, *et al*.,    Case No.: 8-13-74303-AST
                                                    Case No.: 8-13-74304-AST
                                                    Chapter 11
                                       Debtors.     (Jointly Administered)
----------------------------------------------------------X
Devices Liquidation Trust,

                                       Plaintiff,   Adv. Pro. No.: 8-15-08237-AST

        - against -

KMT Wireless, LLC
dba CynergyHitech,

                                       Defendant.
----------------------------------------------------------X

## DECISION AND ORDER DENYING
## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

By this adversary proceeding, plaintiff, Devices Liquidation Trust (the "Trust" or

"Plaintiff"), seeks to recover $3,824,194.36 of alleged avoidable transfers (the "Transfers") from

defendant, KMT Wireless, LLC d/b/a CynergyHitech ("KMT" or the "Defendant").   KMT seeks

summary judgment on the Trust's preference claims based on an argument that it was a critical

vendor of one of the Debtors and could or should have been insulated from preference liability.

The Trust timely filed opposition.  Because KMT has failed to establish that it is entitled to

judgment as a matter of law, summary judgment will be denied.

## Jurisdiction

This Court has jurisdiction over this core proceeding pursuant to 28 U.S.C. §§ 1334(b)

and 157(b)(2)(A) and (F), and the Standing Orders of Reference in effect in the Eastern District

of New York dated August 28, 1986, and as amended on December 5, 2012, but made effective

*nunc pro tunc* as of June 23, 2011.  The Court is not stating findings of facts and conclusions of law as Federal Rule of Bankruptcy Procedure ("Bankruptcy Rule") 7052, incorporating Federal Rule of Civil Procedure ("FRCP") 52(a)(3), does not so require in ruling on a motion for summary judgment.  FED. R. BANKR. P. 7052.

### Background and Procedural History[1]

Personal Communications Devices, LLC ("PCD") and Personal Communications Devices Holdings, LLC ("Holdings"), the debtors in these cases (together, the "Debtors"), each filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code (the "Code") on August 19, 2013 (the "Petition Date").  The cases were jointly administered.

Prior to the Petition Date, Debtors were wireless telecommunications companies. Collectively, Debtors acted as an intermediary between domestic wireless carriers and various foreign wireless handset manufacturers.  PCD was a leading distributor of wireless communication devices and accessories.  Each wireless device sold by PCD was accompanied by a comprehensive warranty that required PCD to provide certain repair services.  Additionally, PCD repaired and refurbished devices that were returned outside of their warranty period.  More than 97% of PCD's warranty repair services were performed by certain third-party repair service vendors ("Repair Services Vendors").  [*Declaration of Raymond F. Kunzmann Pursuant to Local*

---

[1] The factual background and procedural history are taken from the pleadings, exhibits and other papers submitted by the parties and the public dockets in this case.  Local Bankruptcy Rule 7056-1 requires that a party seeking summary judgment file a statement of facts the party alleges to be without a genuine dispute, and that each fact be supported by a citation to admissible evidence in the summary judgment record as required by Rule 56(c) of the Federal Rules. *See* FED. R. CIV. P. 7056(e); E.D.N.Y. LBR 7056-1.  Similarly, facts alleged by a party opposing summary judgment must be set out in a LBR 7056-1 statement supported by admissible testimonial or documentary evidence, and with citation to conflicting testimonial or documentary evidence as required by Rule 56(c); a party may not simply deny alleged material facts by a conclusory statement, or without citation to admissible evidence.  This Court has not considered any fact alleged by Plaintiff and Defendant which is not properly sourced or supported.  This Court has also accepted as true properly supported facts alleged by Plaintiff and Defendant which have not been properly refuted or challenged by Plaintiff or Defendant. *See* FED. R. CIV. P. 7056(e); E.D.N.Y. LBR 7056-1; *Meredith Corp. v. Sesac, LLC*, 1 F. Supp. 3d 180, 186 n.3 (S.D.N.Y. 2014).

*Bankr Rule 1007-4 in Support of Chapter 11 Petition and Requests for Relief* ("*Kunzmann*

*Decl.*") main case dkt item 2, ¶ 62; adv. dkt item 32-4; Motion, adv. dkt item 31, p. 6]

Defendant is an electronics service provider and specializes in manufacturer warranty

services and re-manufacturing or repair of mobile phones, supporting devices, and other ancillary

devices.  Defendant was a third-party repair service vendor used by PCD, and, along with a

company known as Shine Electronics Co., Inc. ("Shine"), performed almost all of the warranty

repair services and the out-of-warranty repairs for PCD.

During the 90-day period prior to the Petition Date, from May 21, 2013 through August

19, 2013 (the "Preference Period"), Debtors made transfers to KMT in an amount not less than

$3,824,194.36.

Almost immediately after filing bankruptcy, on August 20, 2013, Debtors filed a motion

seeking to sell substantially all of their assets to Quality One Wireless, LLC ("Quality One")

pursuant to an Asset Purchase Agreement ("APA").  That same day, Debtors filed a Customer

Programs Motion[2] ("CPM"), seeking to maintain PCD's business until its sale to Quality One

could be consummated. [main case dkt item 8; adv. dkt item 32-6]  In the CPM, PCD stated that

the Repair Service Vendors were critical to PCD's ongoing operations and, specifically, critical

to PCD's ability to honor warranty claims and to refurbish phones returned out of warranty.

PCD alleged that the loss of any one Repair Service Vendor would cause severe disruption to

PCD's business and its proposed sale.

The CPM does not identify who the Repair Service Vendors are, nor state how much

each such vendor was owed as of the Petition Date; however, the parties agree that KMT would

---

[2] Debtors filed a Motion seeking entry of interim and final orders: (I) Authorizing, But Not Directing, the Debtors to (A) Maintain and Administer Customer Programs and (B) Honor Related Prepetition Obligations to Customers and (II) Authorizing, But Not Directing, Financial Institutions to Honor All Related Payment Requests. [Customer Service Motion, main case dkt item 8]

have fallen within the definition of a Repair Service Vendor.[3]  As of the Petition Date, PCD

owed the Repair Service Vendors approximately $975,000. [Motion, adv. dkt item, p. 6 (citing

*Kunzmann Decl*. ¶ 62; CPM ¶ 18)][4]

On August 21, 2013, the Court entered an interim order on the CPM, *inter alia*,

authorizing but not requiring Debtors to maintain and administer customer programs and honor

related pre-petition obligations to customers ("Interim Order"). [main case dkt item 35; adv. dkt

item 32-7]

On September 10, 2013, the Court entered a final order granting the relief requested in

the CPM (the "Final Order"); as with the Interim Order, the Final Order allowed but did not

require Debtors to maintain and administer customer programs and honor related pre-petition

obligations to customers. [main case dkt item 101; adv. dkt item 32-8]  In addition, while the

Interim Order provided for a $1 million payment cap to Repair Service Vendors, the Final Order

did not include a payment cap.  However, the CPM did not request that Debtors waive any

chapter 5 causes of action, including preference claims, against any Repair Service Vendors, nor

did the Interim Order or Final Order grant such a release.

On October 17, 2013, the Court entered an order approving the sale of substantially all of

Debtors' assets to Quality One. [main case dkt item 207]

---

[3] Debtors' Consolidated List of Creditors Holding 30 Largest Unsecured Claims lists KMT dba CynergyHitech as holding the 9th largest claim in the amount of $627,315. [main case dkt item 1, p. 7]  Shine is listed as holding the 10th largest claim in the amount of $485,839. *Id*. The nature of all 30 claims on the list is "Trade Debt." *Id*.

[4] In Plaintiff's Responses to Defendant's Statement of Undisputed Facts, Plaintiff stated:

> 15. Plaintiff admits that as of the Petition Date, the debtors *estimated* the Repair Service Vendors were owed approximately $975,000.

[adv. dkt item 37-4, p. 5, ¶ 15 (citing *Kunzmann Decl*., main case dkt item 2, ¶ 62)]

On April 29, 2014, the Court confirmed a liquidating plan (the "Plan"). The Plaintiff Trust was created pursuant to the Plan and is authorized to bring this action.

## This Adversary Proceeding

On August 18, 2015, Plaintiff filed this adversary complaint (the "Complaint") to avoid and recover transfers made to Defendant pursuant to §§ 547-550. [adv. dkt item 1]

On November 16, 2015, Defendant filed its answer (the "Answer"), denied most of the allegations set forth in the Complaint, and raised a number of affirmative defenses including its critical vendor argument. [adv. dkt item 12]

### The Summary Judgment Motion

On August 30, 2017, KMT filed its Motion together with a statement of undisputed facts pursuant to E.D.N.Y. Local Bankruptcy Rule 7056-1, and a memorandum of law (collectively, the "Motion"). [5]

On October 17, 2017, Plaintiff filed its Memorandum of Law in Opposition to the Motion, together with a statement of undisputed facts pursuant to E.D.N.Y. Local Bankruptcy Rule 7056-1 and creditor declarations (collectively, the "Opposition"). [6]

### Summary Judgment Standard

---

[5] Defendant raised affirmative defenses pursuant to § 547(c)(1), (2), & (4); but as KMT has not sought summary judgment relief on its affirmative defenses, none of these are relevant to the instant Motion. For example, on May 10, 2017, Nicholas Tally, on behalf of Plaintiff, signed a declaration stating, *inter alia*, that after analyzing the ordinary course of business defense and the new value defense, Plaintiff determined Defendant was entitled to offset its preference liability, resulting in a net preference liability of $615,568.27. [Declaration of Devices Liquidation Trust adv. dkt item 32-13, ¶ 2–3] However, KMT does not seek partial summary judgment on its affirmative defenses nor an Order under Rule 56(e) limiting the issues for trial.

[6] On November 17, 2017, Defendant filed a Motion to Strike Plaintiff's Statement of Undisputed Fact No. 6 and Supporting Declarations ("Motion to Strike"). [adv. dkt item 42] Defendant also filed a Reply Memorandum in Support of Defendant's Motion for Summary Judgment Dismissing Complaint. [adv. dkt item 43] In its Reply, Defendant rebutted many of Plaintiff's objections to Defendant's statements of undisputed facts. On December 8, 2017, Plaintiff filed a Memorandum of Law in Opposition to Defendant's Motion to Strike. [adv. dkt item 46] On December 15, 2017, Defendant filed a Reply Memorandum of Law in Support of its Motion to Strike. [adv. dkt item 47] Resolution of this dispute is not dispositive on this Court's decision.

Pursuant to Rule 56(c) of the FRCP, incorporated by Bankruptcy Rule 7056(c), summary judgment should be granted to the moving party if the Court determines that "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 n.4 (1986) (quoting FRCP 56(c)) (internal quotation marks omitted). A movant has the initial burden of establishing the absence of any genuine issue of material fact. *Celotex*, 477 U.S. at 322-23. A fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson*, 477 U.S. at 248. An issue of fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* "When summary judgment is sought, the moving party bears an initial burden of demonstrating that there is no genuine dispute of material fact to be decided with respect to any essential element of the claim in issue; the failure to meet this burden warrants denial of the motion." *Smith v. Goord*, No. 906-CV-401 FJS/DEP, 2008 WL 902184 *4 (N.D.N.Y. Mar. 31, 2008) (citing *Anderson*, 477 U.S. at 250 n.4), *aff'd in part, remanded in part*, 375 F. App'x 73 (2d Cir. 2010).

If the movant meets its initial burden, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rather, it must present "significant probative evidence" that a genuine issue of fact exists. *Anderson*, 477 U.S. at 249 (internal citations and quotation marks omitted). "There is no issue for trial unless there exists sufficient evidence in the record favoring the party opposing summary judgment to support a jury verdict in that party's favor." *Cadle Co. v. Newhouse*, 01-cv-1777 DC, 2002 WL 1888716 *4 (S.D.N.Y. 2002) (citing *Anderson*, 477 U.S. at 249); *see also Anderson*, 477 U.S. at 250 (finding that

summary judgment is appropriate only when "there can be but one reasonable conclusion as to the verdict").

## Analysis

KMT and the Trust do not genuinely disagree that KMT was paid the balance of its pre-petition invoices in full, that KMT provided the post-petition services it was called upon to perform, nor that KMT was paid for its post-petition services.  [*KMT's Statement of Undisputed Facts*, adv. dkt 31-2, ¶¶ 67–68; *Trust's Responses to Defendant's Statement of Undisputed Facts*, adv. dkt item 37-4, ¶¶ 67–68]

KMT advances a unique theory in support of its Motion, which it acknowledges is "a case of first impression in the Second Circuit," but asserts has legal precedence elsewhere -- that because KMT was entitled to critical vendor protection under the CPM, this Court, through a hindsight analysis, should decide what it would have done had Debtors asked it to approve a waiver of preference liability as to KMT:

> Like determining the intent of parties to an ambiguous contract, the critical vendor defense requires the court to engage in an exercise of hindsight; to review the record and determine how the various interested parties (e.g. a secured lender or the U.S. Trustee) and, most importantly, the court itself would have responded to a critical vendor motion that included a request for payment of preferential transfers, assuming such transfers had not been made prepetition. If such determination would be too speculative, then the critical vendor defense will fail, at least on a dispositive motion. However, if the record shows that the preference payments would have been approved had they been included in the critical vendor motion, then the critical vendor defense should preclude any preference claim.

Motion, pp. 4–5 [adv. dkt item 31] Notably, at no point does KMT allege that it was unaware of these bankruptcy filings, or that it was not paid for its post-petition services.

Analysis of this argument requires a short statement of what a critical vendor is, at least in the Second Circuit.  In general, granting a party critical vendor status is a way a debtor can obtain a bankruptcy court's authority to violate the fundamental general rule that pre-petition

unsecured debts are not paid post-petition, and authorize the payment of pre-petition debt as necessary (critical) to facilitate the rehabilitation of the debtor.  The court in *In re Ionosphere Clubs, Inc.* stated:

> It was first articulated by the United States Supreme Court in *Miltenberger v. Logansport, C. & S.W. R. Co.*, 106 U.S. 286, 1 S.Ct. 140, 27 L.Ed. 117 (1882) and is commonly referred to as either the "doctrine of necessity" or the "necessity of payment" rule. This rule recognizes the existence of the judicial power to authorize a debtor in a reorganization case to pay pre-petition claims where such payment is essential to the continued operation of the debtor.
>
> "[T]he 'necessity of payment' doctrine ... '[permits] immediate payment of claims of creditors where those creditors will not supply services or material essential to the conduct of the business until their pre-reorganization claims shall have been paid.'"

98 B.R. 174, 175–76 (Bankr. S.D.N.Y. 1989) (quoting *In re Lehigh & New England Railway Company*, 657 F.2d 570, 581 (3rd Cir. 1981) (quoting *In re Penn Central Transportation Co.*, 467 F.2d 100, 102 n.1 (3rd Cir. 1972)).

Thus, under the Interim Order and Final Order, the Debtors were authorized to pay Repair Service Vendors amounts they were owed on pre-petition unsecured claims in order to facilitate their continued provision of post-petition services, for which they would also be paid. However, what is crucial to a doctrine of necessity request is to spell out who will be paid on a pre-petition claim, how much they will be paid, and why that payment is essential to the debtor's ongoing operations and its efforts to reorganize; to require less would be to convert a doctrine born of necessity into a license to do what may be convenient for a debtor to avoid deterioration in its relations with its vendors or suppliers.  Further, while this Court is certainly poised to interpret and enforce the orders it has entered, it is not prepared to reimagine what it might have done had it been asked to provide significantly different relief on notice to parties-in-interest with an opportunity to object and be heard.

KMT and the Trust refer to the following cases.  In *Osborne v. Howell Electric Motors (In re Fultonville Metal Prod. Co.)*, a post-confirmation liquidating trustee brought an adversary proceeding to avoid debtor's pre-petition payments to a supplier, Howell, as preferences or constructively fraudulent transfers. 330 B.R. 305 (Bankr. M.D. Fla. 2005).  Howell asserted various defenses.  Relevant here, in seeking summary judgment on estoppel, law of the case, and res judicata, Howell relied on its critical vendor status.  Howell noted that debtor had requested authority to pay Howell's pre-petition claim in the amount of $38,904.36, because payment of that claim was necessary for the Debtor "to maintain an uninterrupted supply of quality goods and services to its customers" and that "Unless [debtor] is given the authority to pay the prepetition claim of Howell, [the debtor's] day-to-day operations will be severely disrupted." *Fultonville*, 330 B.R. at 312.  The court had entered the critical vendor motion, and debtor was authorized to pay Howell's pre-petition claim.

Howell contended that the preference suit was, in effect, an effort to "get behind the Critical Vendor Motion and Order by attacking alleged prepetition payments made (which, using the logic asserted by the Debtors in its Critical Vendor Motion, would have been equally critical and necessary to the success of the business operations of the Debtors)[]" and that the debtor "relinquished its right to recover the prepetition transfers when it requested and obtained 'Critical Vendor' status for Howell."  *Id.*

After noting that granting a party critical vendor status involves an exception to the fundamental bankruptcy principle of equality of distribution to creditors of equal rank, a notion echoed in the preference provisions of the Code, the court stated that "any rights claimed by a creditor as attendant to its 'critical vendor' status should also be viewed with circumspection." *Id.* at 313.  The *Fultonville* court went on to note that "Neither the Critical Vendor Motion nor the Critical Vendor Order contains any provision regarding the release of Howell from liability

9

under § 547 or § 548," and Howell did not establish that the court would have granted the debtor's "Critical Vendor" motion, if the debtor had asked for permission to pay the total amount of the vendor's pre-petition claims, including those amounts that were the subject of the preference action. *Id.* at 313–14.

Similarly, in *Zenith Indus. Corp. v. Longwood Elastomers, Inc. (In re Zenith Indus. Corp.)*, 319 B.R. 810, 813 (Bankr. D. Del. 2005), a supplier, Longwood, asserted that its status as a critical vendor "negates the requisite showing under 11 U.S.C. § 547(b)(5)" that it received more on account of the transfer than it would have in a hypothetical chapter 7 liquidation. *Id*. at 813. *Zenith* was decided on a Rule 12(f) motion by the plaintiff to strike this defense. Longwood relied in part on *Kimmelman v. Port Authority of N.Y. & N.J. (In re Kiwi Int'l Air Lines, Inc.)*, 344 F.3d 311 (3d Cir. 2003). The *Zenith* court described *Kiwi* as standing for the proposition that when a debtor obtains an order from a bankruptcy court authorizing it to sell substantially all of its assets and as part of the sale the debtor also obtains court approval pursuant to § 365 to assume and assign executory contracts, if the vendor / preference defendant at issue was a party whose contract was assumed and assigned, then any preference that might have been recovered would run afoul of the debtor's obligation to cure any pre-petition defaults:

> By filing a preference action against the contract parties in *Kiwi*, the chapter 7 trustee was improperly seeking to vitiate the right that § 365 accorded the parties whose contracts were assumed—a right to a complete cure of all pre-petition obligations. The circumstances are entirely different here. The Essential Vendor Order did not require that any payments be made, did not identify any vendors who might be beneficiaries of the order, and because Longwood had been paid pre-petition it could not possibly be deemed a beneficiary of that order.

*Zenith*, 319 B.R. at 815. The *Zenith* court observed that Zenith did not seek to assume and assign any of Longwood's contracts; while an order to assume and assign an executory contract mandates cure payments, the essential vendor order in *Zenith* provided that payment of pre-petition claims was "wholly discretionary." *Id.*; *see also In re Hayes Lemmerz Int'l, Inc.*, 313

B.R. 189, 193 (Bankr. D. Del. 2004) (rejecting use of critical vendor defense to a preference action where debtor was "authorized, but not directed," to pay prepetition critical vendor claims not to exceed $1.6 million; holding that (1) payments were made before the critical vendor order was entered, (2) neither the motion nor the order named defendant specifically as a critical vendor, and 3) even if defendant did receive some payments under the order, because the order was only permissive, not mandatory, it does not cover payment of all pre-petition claims.).  In striking Longwood's critical vendor defense, the *Zenith* court emphasized that even if the parties stipulated that Zenith would have included the pre-petition payment in its essential vendor motion, Longwood's defense would still fail: "It is speculative to conclude that no party in interest … would have objected or that the Court would have granted a motion that had not been made…." *Id.* at 817.

Finally, the parties refer to *AFA Inv. Inc. v. Trade Source, Inc. (In re AFA Inv. Inc.)*, in which the court denied summary judgment to the chapter 11 debtors who filed a $24,999.99 preference claim against a company, Trade Source, which had been treated as a critical vendor. 538 B.R. 237 (Bankr. D. Del. 2015).  In addressing whether that creditor received more on account of the transfer than it would have received in a hypothetical chapter 7 liquidation under § 547(b)(5), the court noted as follows:

> the Debtors identified Trade Source as a critical vendor and executed a separate agreement obligating themselves to pay Trade Source its pre-petition claim as long as Trade Source continued to provide post-petition services on pre-petition terms… The critical vendor motion was in fact approved in this case and the Debtor executed and complied with the agreement to pay Trade Source's pre-petition claims.

*AFA Inv.*, 538 B.R. at 244.  The court sided with Trade Source and noted that the Third Circuit cannot compel an unsecured creditor in a preference action to turn over amounts related to pre-petition payments that were paid in full post-petition pursuant to a court order or court-approved

stipulation.  *Id.* at 243.  The court emphasized that "had the alleged preferential payment not been made pre-petition, Trade Source would have received that payment post-petition, as part of the continued services agreement it had with the Debtors."  *Id.* at 244.  Therefore, the court denied summary judgment because debtors could not establish that Trade Source received more on account of the transfer than it would have under a chapter 7 liquidation.  *Id.*

Here, this Court did not require Debtors to make any payments to any critical vendors, nor provide for any contracts with KMT to be assumed and assigned, nor provide a waiver of preference liability for KMT.  The CPM did not include any discussion of waiver of preference liability, especially the potential of waiving a nearly $4,000,000 claim.  The CPM provided:

> 18. The vast majority (in excess of 97%) of the Debtors' warranty repair services are performed by certain third-party repair service vendors (collectively, the "Repair Service Vendors"). The Debtors pay Repair Service Vendors approximately $2,000,000 per month. The Debtors estimate that as of the Petition Date, they owe the Repair Service Vendors approximately $975,000.

\*\*\*

> 22. By this Motion, the Debtors request entry of the Proposed Orders, authorizing the Debtors to (a) pay or otherwise honor prepetition obligations to their customers arising under or based upon the Customer Programs that are outstanding as of the Petition Date (collectively, the "Customer Obligations") and (b) continue to maintain and administer the Customer Programs postpetition in the ordinary course of business consistent with past practice, as the Debtors determine is necessary in the exercise of the Debtors' business judgment. Subject to entry of the Final Order, the Debtors will not pay or honor such Customer Obligations that exceed $1 million in the aggregate….

\*\*\*

> 37. Nothing contained herein is intended or should be construed as an admission as to the validity of any claim against Debtors, a waiver of the Debtors' rights to dispute any claim…. The Debtors expressly reserve their right to contest any claims related to the Customer Programs and the Customer Obligations under applicable non-bankruptcy law. Likewise … any payment made pursuant to the Court's order is not intended and should not be construed as an admission as to the validity of any claim or a waiver of the Debtors' rights to dispute such claim subsequently.

[main case dkt item 8; adv. dkt item 32-6]

Thus, there was no request to insulate any Repair Service Vendors from preference or other pre-petition avoidance claims.  Further, both the Interim Order and Final Order provide Debtors with the right but not the obligation to honor certain vendor service agreements:

> 2. The Debtors are authorized, but not directed, in their discretion to pay and otherwise honor their prepetition obligations to customers arising under or based upon Customer Programs in the ordinary course of business consistent with past practice and continue to honor, maintain and administer the Customer Programs in the ordinary course of business consistent with past practice, as the Debtors determine is necessary or appropriate in the exercise of the Debtors' business judgment and; *provided, however*, that until a Final Hearing is held, the Debtors shall only honor those Customer Programs to the extent that the Debtors determine, in the exercise of their business judgment, that honoring such Customer Programs is necessary to avoid immediate and irreparable harm to the Debtors; *provided further*, that in no event shall the Debtors pay any Customer Obligations before such amounts are due and payable.

[Interim Order, main case dkt item 35; adv. dkt item 32-7 (emphasis in original)]

> 2. The Debtors are authorized, but not directed, in their discretion to pay and otherwise honor their prepetition obligations to customers arising under or based upon Customer Programs in the ordinary course of business consistent with past practice and to continue to honor, maintain and administer the Customer Programs in the ordinary course of business consistent with past practice, as the Debtors determine is necessary or appropriate in the exercise of the Debtors' business judgment; *provided, however*, that in no event shall the Debtors pay any Customer Obligations before such amounts are due and payable.

[Final Order, main case dkt item 101; adv. dkt item 32-8 (emphasis in original)]

This Court also notes the fact finding that would need to be undertaken in considering this defense, either on this Motion or at a trial.  KMT supplied three affidavits in support of its Motion, primarily directed to demonstrating that its services were critical to Debtors' proposed sale to Quality One: (i) an affidavit by Robert Desio, PCD's former National Service Manager ("Desio Aff.") [adv. dkt item 35], (ii) an affidavit by Todd Mazza, PCD's former Vice President of Sales to Verizon ("Mazza Aff.") [adv. dkt item 34], and (iii) an affidavit by Darin Mickel, KMT's principal ("Mickel Aff.") [adv. dkt item 33].  These affiants acknowledge that the Repair Service Vendors were critical to Debtors' ability to honor their warranty claims and to refurbish

phones returned out of warranty, and that the loss of the Repair Service Vendors would have caused a severe disruption to the Debtors' business. [*Desio Aff.* ¶¶ 6–7; *Mazza Aff.* ¶¶ 12–13] Affiants stated that it would have taken Debtors many months to locate, engage and train another vendor to perform the repairs Defendant provided. [*Desio Aff.* ¶ 9; *Mazza Aff.* ¶ 14] KMT also asserts that it would have been impossible for Shine to perform the repairs being performed by KMT, thus causing a severe disruption to Debtors' business, thus preventing the sale from being consummated. Accordingly, KMT argues, no one would have objected to approving payment of the alleged preferential transfers in the CPM and accompanying orders. Therefore, had all of this occurred, says KMT, the Court would have approved of the payments and a preference waiver.

In support of its Opposition,[7] Plaintiff provided three creditor declarations: (i) the Declaration of HTC America, Inc.,[8] (ii) the Declaration of Huawei Device USA,[9] and (iii) the Declaration of TCT Mobile Inc.[10] [adv. dkt item 37-1] The declarations state that each respective creditor would have objected to the inclusion of a preference waiver.

This Court rejects KMT's theory of hindsight extrapolation, of trying to consider and then make findings of fact on what it might have approved at the initial stages of this case if a request had been made to waive a nearly $4,000,000 claim in addition to paying nearly $1,000,000 on pre-petition claims. This Court will not at this juncture conjecture as to whether Debtors would have made that request and who might have objected to it and what ruling the Court might have made. Rather, this Court will enforce the orders it did enter, which are not ambiguous and do not support KMT's Motion.

---

[7] The Trust also objected to a number of Defendant's statements of undisputed facts.

[8] Debtors' largest unsecured creditor. The petition lists its claim as totaling $96,273,931. [main case dkt item 1, p. 7]

[9] Debtors' fifth largest creditor. The petition lists its claim as totaling $4,912,438. [main case dkt item 1, p. 7]

[10] Debtors' third largest creditor. The petition lists its claim as totaling $21,420,131. [main case dkt item 1, p. 7]

14

## <u>Conclusion</u>

KMT, as the movant, has failed to establish that there is no genuine issue as to any material fact and that it is entitled to judgment as a matter of law.  Accordingly, Defendant's Motion for summary judgment will be denied.

For the foregoing reason, it is hereby

**ORDERED**, that the Motion for summary judgment is DENIED; and it is further

**ORDERED**, that the Court shall enter a trial scheduling order.



Dated: August 17, 2018
     Central Islip, New York

_____
**Alan S. Trust**
**United States Bankruptcy Judge**